UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
09-CV-2203(JMR/JSM)

| | |
|---|---|
| Graphic Communications Local 1B Health & Welfare Fund "A"; and the Twin Cities Bakery Drivers Health and Welfare Fund, individually and on behalf of all others similarly situated ) ) ) ) ) ) ) | |
| v. ) | ORDER |
| ) | |
| CVS Caremark Corporation; CVS Pharmacy, Inc.; Caremark LLC; Caremark Minnesota Specialty Pharmacy, LLC; Caremark Minnesota Specialty Pharmacy Holding, LLC; Coborn's Incorporated; Kmart Holding Corporation; Sears, Roebuck and Co.; Sears Holdings Corporation; Snyder's Drug Stores (2009), Inc.; Snyder's Holdings, Inc.; Target Corporation; Walgreen Co.; and Wal-Mart Stores, Inc. ) ) ) ) ) ) ) ) ) ) ) ) ) | |

Defendants move to dismiss plaintiffs' Second Amended Complaint. Plaintiffs move to remand to state court. Defendants' motion is denied; plaintiffs' motion is granted.

I. Background

Plaintiffs are union-sponsored health benefit plans. Defendants run and operate pharmacies, often as part of larger retail stores. Plaintiffs' complaint alleges their members filled drug prescriptions at defendants' pharmacies, but did not realize the appropriate savings resulting from the use of generic drugs. They claim defendants' failure to pass on these savings violates a Minnesota statute, and gives rise to claims of consumer fraud and

unjust enrichment.

Defendants removed plaintiffs' original complaint to federal court on August 21, 2009. Plaintiffs amended the complaint on August 28, 2009. Defendants moved to dismiss. At the hearing on November 20, 2009, the Court dismissed plaintiffs' first amended complaint without prejudice, granting leave to replead on an expedited basis. Plaintiffs filed their Second Amended Complaint (the "Complaint") on November 25, 2009. Defendants again move to dismiss; plaintiffs seek to remand.

II. Analysis

A. Motion to Dismiss

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P"), the Court takes as true the properly-pleaded factual allegations in the Complaint. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). The Court, however, is not "bound to accept as true a legal conclusion couched as a factual allegation." Id.; Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). To be sustained, a complaint must contain sufficient facts -- accepted as true -- to state a "plausible on its face" claim to relief. Ashcroft, 129 S. Ct. at 1949. A "plausible" claim states facts which allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Here, plaintiffs claim the pharmacies violated Minnesota

Statute § 151.21. Under this statute, a pharmacist filling a prescription which does not specify that it be "dispensed as written," may substitute a "generically equivalent drug that, in the pharmacist's professional judgment, is safely interchangeable with the prescribed drug," if the substitution is disclosed to the purchaser, and the purchaser does not object. Minn. Stat. § 151.21 subd. 3 (2008). The same statute also regulates pricing by providing that the pharmacist may not substitute a more expensive drug, and if several options are available in stock, the pharmacist "shall dispense the least expensive alternative." Minn. Stat. § 151.21 subd. 4.

The statute then directs that "[a]ny difference between the acquisition cost to the pharmacist of the drug dispensed and the brand name drug prescribed shall be passed on to the purchaser." Id. Plaintiffs claim the pharmacies failed to pass on the cost difference when filling prescriptions, thereby violating Minnesota's pharmacy and consumer fraud statutes, and giving rise to claims of common-law unjust enrichment.

The pharmacies argue that Minn. Stat. § 151.21 is focused only on the cost difference between brand name and generic drugs, and applies only when a brand name drug is prescribed. Viewed from this perspective, the statute aims to prevent pharmacies from charging customers the brand name price when a generic drug is substituted. To plead a violation, the pharmacies claim each

3

plaintiff must identify individual transactions in which doctors prescribed brand name drugs, and generics were substituted.

Plaintiffs read the statute differently: They claim the statute forbids pharmacists from making an enhanced profit on generic drugs. Therefore, in plaintiffs' view, whenever a generic drug is dispensed, and the pharmacy-seller retains a profit greater than that it would have realized for the sale of the brand name drug, the statute is violated.

No Minnesota court has construed the statute. Absent such guidance, and for purposes here, the Court finds the statute ambiguous. Each side offers a reasonable interpretation, and neither is foreclosed by the text of the statute or decisions of the Minnesota Supreme Court. Accordingly, plaintiffs' interpretation can support a plausible claim for relief.

Here, the Complaint specifies five prescription drugs recently approved for sale in generic form; the dosage and quantity typically prescribed for a month's supply; and the acquisition cost paid by a competing pharmacy not listed as a defendant in this action. (Compl. ¶¶ 50, 55, 60.) Given plaintiffs have had no opportunity to discover defendants' actual costs, pleading a competitor's costs permits a reasonable inference that defendants' costs are similar.

For each drug, the Complaint identifies particular prescriptions filled by defendants on specific dates in 2008, the

4

amount actually charged, and the amount allegedly overcharged. (Compl. ¶¶ 75, 76, 88, 89, 99, 100, 110, 120, 121.) If plaintiffs' interpretation of Minn. Stat. § 151.21 subd. 4 is correct -- a point on which this Court expresses no opinion -- these facts, taken as true, permit a reasonable inference that the pharmacies retained a greater profit on the generic drugs than the statute allows. The Court finds that, as to the five example drugs, plaintiffs' allegations are sufficient, and sufficiently specific, to put the pharmacies on notice of the nature of the claim against them under each of plaintiffs' legal theories.[1]

Plaintiffs also claim the five identified drugs are representative examples, and permit the Court to infer the pharmacies may have overpriced other drugs as well. (Compl. ¶¶ 62-63.) The Court declines to do so at this time. Without additional allegations -- for example, which drugs, which defendants, the dates of the transactions, and the amount of the alleged overcharge -- the Complaint fails to satisfy the requirements of Fed. R. Civ.

---

[1] The Court is mindful that plaintiffs' claims under the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.60 subd. 1, must be pleaded with sufficient particularity to satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b). As to the five example drugs, the Court finds the Complaint sufficiently pleads the "who, what, when, where, why and how" required by Rule 9(b). The Complaint details numerous drug transactions in which defendants allegedly were required by law to charge a certain price, and instead charged consumers a higher price. For each transaction, the alleged fraud is not disclosing to the consumer that they were doing so. (Compl. ¶ 146.)

P. 8(a).[2]

As to the five example drugs, the Court finds plaintiffs have alleged facially plausible claims. Accordingly, defendants' motion to dismiss is denied.

B. Motion to Remand

Plaintiffs move to remand this matter to Minnesota state court, its original venue. Such a motion must usually be brought within 30 days after the original removal to federal court. Here, however, the motion is plainly based on a lack of subject matter jurisdiction under the Class Action Fairness Act. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Accordingly, the Court considers the motion timely.

Turning to the substance of the motion, the Court considers whether it has subject matter jurisdiction. "Federal courts are courts of limited jurisdiction. The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." Godfrey v. Pulitzer Pub. Co., 161 F.3d 1137, 1141 (8th Cir. 1998)(internal citations and quotations omitted). In determining its own jurisdiction, the Court may

---

[2] Having established a claim for relief which satisfies the Rule 12/Twombly/Iqbal standards, plaintiffs may yet invoke the amendment principles of Fed. R. Civ. P. 15.

6

consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Johnson v. United States, 534 F.3d 958, 962 (8th Cir. 2008). Although the Court would ordinarily consider the allegations of the complaint as it existed at the time of removal, that version has been dismissed. Accordingly, the allegations of the Second Amended Complaint are considered.

The pharmacies suggest the Class Action Fairness Act (the "Fairness Act") grants subject matter jurisdiction because there is minimal diversity, and an aggregate amount in controversy of $5 million or more. 28 U.S.C. § 1332(d)(2). Plaintiffs concede these requirements are met. The Fairness Act, however, contains an exception for local controversies. 28 U.S.C. § 1332(d)(4). Plaintiffs argue the exception divests the Court of subject matter jurisdiction.

The Court agrees. Section (d)(4) provides, "[a] district court shall decline to exercise jurisdiction under paragraph (2)" if certain conditions are met. 28 U.S.C. § 1332(d)(4). For the local controversy exception, those conditions are: (1) more than two-thirds of the proposed class members are Minnesota citizens; (2) at least one defendant is a Minnesota citizen whose alleged conduct forms a "significant basis" for the class claims, and from whom "significant relief" is sought; and (3) no similar class

7

action has been filed in the preceding three years.  28 U.S.C. § 1332(d)(4)(A).  The third point is not disputed.  The Fairness Act itself does not require any particular amount or type of proof, see 28 U.S.C. § 1332(d)(4)(A), and neither the U.S. Supreme Court nor the Eighth Circuit Court of Appeals has considered the degree of proof required.

When considering whether more than two-thirds of the proposed class are Minnesotans, the Court is mindful that "class action lawsuits may become totally unworkable in a diversity case if the citizenship of all members of the class, many of them unknown, had to be considered."  Preston v. Tenet Healthsystem Mem. Med. Ctr., Inc., 485 F.3d 804, 816 (5th Cir. 2007).  Thus, the evidentiary standard for establishing the domicile of the plaintiff class "must be based on practicality and reasonableness," and courts must have "wide, but not unfettered, discretion to determine what evidence to use" in determining jurisdiction.  Id. at 816-17.  "At this preliminary stage, it is unnecessary for the district court to permit exhaustive discovery capable of determining the exact class size to an empirical certainty."  Id. at 821.

The Court finds, for purposes of considering jurisdiction, plaintiffs have offered a sufficient factual basis from which to conclude that two-thirds of the proposed plaintiff class are Minnesota citizens.  The class includes those who have purchased or paid for generic drugs "dispensed by Defendants in the state of

Minnesota on or after July 28, 2003" with certain exceptions, including drugs purchased through Medicare and Medicaid (Compl. ¶ 136). Both individual purchasers and third-party payors are potential class members. The two named plaintiffs allege they engaged in more than 34,000 prescription drug transactions with defendants in 2008, and approximately 200,000 transactions "over the six-year statute of limitations period." (Compl. ¶ 62.)

Plaintiffs have submitted census data showing 87% of prescription drug sales to individual consumers in Minnesota occur within the state's most populous region, the Twin Cities metropolitan area (which includes a small part of Wisconsin). This evidence suggests prescription drug sales in Minnesota track population density, permitting an inference that individuals who purchase prescription drugs tend to do so close to home. Plaintiffs have also presented census data tending to show Minnesota has a relatively low rate of out-migration. For purposes of this motion, the Court finds plaintiffs can make a prima facie case that over two-thirds of individuals buying prescription drugs in Minnesota lived in Minnesota at the time, and are likely to be citizens of Minnesota.

Defendants respond by pointing out that over 90% of Minnesotans have some health insurance coverage, and suggesting prescription benefits may be provided by out-of-state insurers, who are also potential class members. The Court accepts this

information, for the sake of argument, but finds it does not materially alter the calculus.

According to plaintiffs' census data, there are approximately 443,733 uninsured individuals (8.5% of a population of 5.2 million), 4.7 million insured individuals, and 151,526 private, non-farm businesses in Minnesota. Other than their own members' experiences, plaintiffs offer no actual data showing which individuals and businesses bought prescription drugs from defendants during the class period. Instead, they appear to assume that each individual and business in Minnesota made identical purchases of generic prescription drugs since July 2003. For the purpose of establishing a ratio of in-state to out-of-state plaintiffs, and in the absence of countervailing evidence, the Court will accept this assumption.

Looking at the statistics in the light most favorable to defendants, the Court assumes, first, that none of the 4.7 million insured Minnesotans pays a co-payment for prescriptions, and therefore, all Minnesotans with insurance are excluded from the class. Next, the Court assumes that every private, non-farm business in Minnesota gets its employees' prescription benefits through an out-of-state insurer. With these assumptions, all of which favor defendants, the potential class would consist of 595,259 prescription drug purchasers, of which about 75% (the uninsured individuals) are Minnesota residents, and 25% (the

employers' insurers) are residents of other states.

Given the information available at this early stage of the litigation, the Court finds plaintiffs have presented sufficient evidence that two-thirds of the plaintiff class are likely to be Minnesota citizens.

Plaintiffs also aver "significant relief" is sought from at least three Minnesota defendants -- Target, Coborn's, and Snyders -- whose conduct, they contend, is a "significant basis" for the claims at issue. The statute does not define "significant relief" or "significant basis," and the term has not been defined by the U.S. Supreme Court or the Eighth Circuit.

The word "significant" is commonly understood as "meaningful." Am. Heritage Dictionary (2d Coll. Ed. 1982). The Eleventh Circuit circularly defined "significant relief" as "a significant portion of the entire relief sought by the class." Evans v. Walter Indus., Inc., 449 F.3d 1159, 1167 (11th Cir. 2006). The Third Circuit holds "the significant basis provision effectively calls for comparing the local defendant's alleged conduct to the alleged conduct of all the Defendants." Kaufman v. Allstate New Jersey Ins. Co., 561 F.3d 144, 156 (3d Cir. 2009).

Plaintiffs allege, without contradiction, that Target, Snyders and Coborn's collectively own 166, or about 43%, of the 384 Minnesota pharmacies of concern to the Court. At this early stage, prior to discovery, such a percentage is facially sufficient to

demonstrate these Minnesota defendants may have engaged in a "significant part of the alleged conduct of all defendants," see Kaufman, 561 F.3d at 156. As such, relief sought from these Minnesota defendants may constitute a meaningful portion of the total relief sought by the class. The Court finds that, at this stage of the litigation, no more is needed.

The "local controversy exception" applies. Having made that determination, the Court must comply with Congress's statutory direction to "decline to exercise jurisdiction" over the matter. Therefore, applying Congress's ukase, the Court finds itself without subject matter jurisdiction.

In an effort to avoid this outcome, defendants grasp at 28 U.S.C. § 1331. They strain to argue that, because these claims arise from the sale of prescription drugs, Medicaid, Medicare, and ERISA are implicated, thus constraining the Court to find federal jurisdiction.

While the Court is charmed by defendants' fervent wish to remain within the shelter of the federal forum, their argument is silly. The United States is not a party. There is no dispute as to the constitutionality, interpretation, or application of any federal law. There is no challenge to any ERISA plan or its application. Plaintiffs simply claim they have been overcharged, irrespective of the source of the funds. Whether or not some of the purchasers may be reimbursed through Medicaid or their federal

employer's health benefits program does not create federal question jurisdiction. There is no "actually disputed and substantial" federal issue necessarily raised by the Complaint which would make a federal forum appropriate. See Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., 545 U.S. 308, 314 (2005). Thus, there is no § 1331 subject matter jurisdiction.

Lacking subject matter jurisdiction, the Court grants plaintiffs' motion to remand the matter to state court. Defendants zealously argue Minnesota's generic drug-pricing statute creates no private right of action. They may be correct, but this Court will not be the declarant. The question, and this case, properly belong in Minnesota state court, to which it will be returned.

III. Conclusion

Defendants' motion to dismiss is denied, and plaintiffs' motion to remand is granted. This matter is remanded to the Hennepin County District Court for the Fourth Judicial District.

Dated: July 19, 2010

                                      s/ James M. Rosenbaum
                                      JAMES M. ROSENBAUM
                                      United States District Judge